| | |
|---|---|
| 1 | KAREN P. HEWITT |
|  | United States Attorney |
| 2 | AARON B. CLARK |
|  | Assistant U.S. Attorney |
| 3 | California State Bar No. 239764 |
|  | United States Attorney's Office |
| 4 | 880 Front Street, Room 6293 |
|  | San Diego, California 92101-8893 |
| 5 | Telephone: (619) 557-6787/(619) 235-2757 (Fax) |
|  | Email: aaron.clark@usdoj.gov |
| 6 | Attorneys for Plaintiff |
|  | United States of America |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1731H |
|---|---|---|
| Plaintiff, | ) | DATE:    July 14, 2008 |
| | ) | TIME:    2:00 p.m. |
| v. | ) | COURTROOM: 13 |
| | ) | Before Honorable Marilyn L. Huff |
| MAGDALENO CARRENO, JR. (1), and | ) | |
| VALENTINE ESCOBAR-CHAVEZ (2), | ) | UNITED STATES' RESPONSE TO |
| | ) | DEFENDANTS' MOTIONS TO: |
| Defendant(s). | ) | |
| | ) | (1)  COMPEL DISCOVERY; AND |
| | ) | (2)  LEAVE TO FILE FURTHER |
| | ) |       MOTIONS |
| | ) | |
| | ) | TOGETHER WITH STATEMENT OF |
| | ) | FACTS AND MEMORANDUM |
| | ) | OF POINTS AND AUTHORITIES |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Aaron B. Clark, Assistant U.S. Attorney, and hereby files its Response to Defendants' Motions in the above-referenced case. Said Response is based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

1 | DATED: July 2, 2008.

2 | Respectfully submitted,

3 | KAREN P. HEWITT
United States Attorney

4 |

5 | s/ Aaron B. Clark
AARON B. CLARK

6 | Assistant United States Attorney

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28 | 2

| | |
|---|---|
| 1 | KAREN P. HEWITT |
| | United States Attorney |
| 2 | AARON B. CLARK |
| | Assistant U.S. Attorney |
| 3 | California State Bar No. 239764 |
| | United States Attorney's Office |
| 4 | 880 Front Street, Room 6293 |
| | San Diego, California 92101-8893 |
| 5 | Telephone: (619) 557-6787/(619) 235-2757 (Fax) |
| | Email: aaron.clark@usdoj.gov |
| 6 | |
| | Attorneys for Plaintiff |
| 7 | United States of America |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1731H |
| | ) | |
| Plaintiff, | ) | DATE: July 14, 2008 |
| | ) | TIME: 2:00 p.m. |
| v. | ) | COURTROOM: 13 |
| | ) | Before Honorable Marilyn L. Huff |
| MAGDALENO CARRENO, JR. (1), and | ) | |
| VALENTINE ESCOBAR-CHAVEZ (2), | ) | |
| | ) | UNITED STATES' STATEMENT OF |
| Defendant(s). | ) | FACTS AND MEMORANDUM OF |
| | ) | POINTS AND AUTHORITIES |
| | ) | |

**I**

**STATEMENT OF THE CASE**

Defendants Magdaleno Carreno, Jr. ("Carreno") and Valentine Escobar-Chavez ("Escobar") (collectively "Defendants") were charged by a grand jury on May 28, 2008 with violating Title 21 U.S.C. 841(a)(1) and 846, Conspiracy to Distribute Methamphetamine, Distribution of Methamphetamine, and Possession of Methamphetamine with Intent to Distribute. Defendants were also charged with Title 18 U.S.C. 922(g)(1) and 922(g)(5), unlawful possession of firearms. Defendants were arraigned on the Indictment on May 29, 2008, and entered a plea of not guilty.

//

3

**II**

**STATEMENT OF FACTS**

**A.     The Initial Contact and Sale – March 26, 2008**

On March 19, 2008 at approximately 6:30 p.m., DEA Task Force Officer ("TFO") Paul Paxton placed a telephone call to Carreno. This call was audio recorded. During the conversation TFO Paxton expressed interest in purchasing an ounce of methamphetamine and asked Carreno if $1600 was the right price. Carreno confirmed the price, and TFO Paxton agreed to purchase an ounce. He then stated he would call Carreno the following week to arrange a meeting.

During the conversation, Carreno asked if TFO Paxton could get handguns or if he knew anyone who sold handguns. Carreno then told TFO Paxton that he would buy any gun TFO Paxton could provide.

On March 26, 2008, Carreno met with TFO Paxton on Shelter Island at the Bali Hai Restaurant. TFO Paxton followed Carreno to through the restaurant and onto an Official Government Vessel (OGV). On board the vessel, Carreno sold TFO Paxton an ounce of methamphetamine for $1600 in official advanced funds.

During the meeting, TFO Paxton told Carreno that he knew someone who sells guns and could arrange a meeting depending on the types of firearms Carreno wanted. Carreno told TFO Paxton he was looking for Berettas or Desert Eagles in 9mm, 40 caliber or 357 caliber. TFO Paxton asked how many guns Carreno was looking to purchase and Carreno told TFO Paxton he could use about 4 or 5, and that he was going to buy two shotguns later that evening.

The meeting on board the OGV was both video taped and audio recorded.

Agents also conducted surveillance of Carreno on the day on March 26, 2008 and observed him drive to and from the meeting with TFO Paxton in a blue GMC Sierra truck bearing license 8F68439. The truck is registered to Carreno at 4038 Beta Street, San Diego, CA.92113.

//

//

**2.     The Second Sale – April 9, 2008**

On April 9, 2008, TFO Paxton met Carreno and lead him to the OGV docked at Shelter Island. On board the boat, Carreno sold TFO Paxton 2 ounces of methamphetamine for $3000.00 in official advanced funds. TFO Paxton then asked Carreno if he had prices for larger quantities of methamphetamine. Carreno said he did not, but that when he returned to his house with the money, he would call from the house and let TFO Paxton talk to his relative.

During the April 9 meeting, TFO Paxton introduced Carreno to Special Agent ("SA") Brooks Jacobsen, who was working in an undercover capacity as a trafficker of illegal firearms. Carreno and SA Jacobsen discussed Carreno's interest in purchasing firearms and Carreno claimed, among other things, he has two "Tommy" guns, one with the drum and one without the drum. Carreno also told SA Jacobsen that he and his people were looking for about 10 guns.

The meeting onboard the OGV was audio recorded.

**3.     The Third Sale – April 23, 2008**

On April 23, 2008 Carreno again met with TFO Paxton aboard the OGV docked at Shelter Island. During that meeting Carreno sold TFO Paxton an additional 2 ounces of methamphetamine for $3000.

SA Jacobsen was also present for the meeting in an undercover capacity and during the meeting showed Carreno several handguns and one sub-machine gun. SA Jacobsen noted to Carreno that these particular firearms had been sold already, but that these were a sampling of the firearms available for purchase. Carreno took pictures of the guns with his cellular phone because "[his] boys will not believe [him]." Carreno also examined and handled the Berretta and .357 stainless steel revolver before using his t-shirt to wipe off the prints on the guns.

The meeting onboard the OGV was both audio and video recorded.

**4.     Search Warrant for 4038 Beta Steet**

Based on the above mentioned set of facts, On May 13, 2008, TFO Paxton and SA Jacobsen secured a search warrant of Carreno's home, 4038 Beta St. San Diego, California, 92113.

5

**5.     The Fourth Sale – May 14, 2008**

On May 14, 2008, Carreno again met with TFO Paxton aboard the OGV, which at the time was docked on Shelter Island. Escobar drove to the meeting in a Silver 2002 Ford Mustang. Carreno rode in the vehicle as a passenger. At the meeting Carreno introduced Escobar to TFO Paxton as his "big boss." Carreno and Escobar then negotiated the sale of three ounces of methamphetamine for $4800, the price of which would be reduced by $800 in exchange for four firearms. Carreno and Escobar each selected two handguns. Carreno and Escobar then divided the $4000 between them.

The ATF firearms purchased by Carreno and Escobar are as follows: (1) Lorcin, model L380, .380 caliber pistol, bearing serial number 353538; (1) Glock, model 27, .40 caliber pistol, bearing serial number BXC012US; (1) Glock, model 30, .45 caliber pistol, bearing serial number 30054RSR; and (1) Ruger, model SP-101, .38 caliber revolver, bearing serial number 571-18822. Three of the handguns are manufactured outside the state of California. The Lorcin, model L380 is manufactured in California but has traveled outside of California in interstate commerce.

This meeting onboard the OGV was audio and video recorded.

**6.     The Arrest and Search**

After Carreno and Escobar left the OGV, they were immediately arrested . At the time of their arrest, Carreno was in possession of $2,900 and the four purchased handguns and Escobar was in possession of $1,100.

Agents seized the 2002 Ford Mustang and took it to the Harbor Police Station. At the that police station, a Narcotics Detector Dog alerted to the dashboard area of the vehicle. A subsequent search found an additional 3 ounces of methamphetamine secreted in that same area.

In a post-<u>Miranda</u> statement, Escobar said that he gave one ounce of methamphetamine to Carreno and was to be paid $1,000. Escobar also admitted knowledge of the methamphetamine in the vehicle and described to agents exactly where it was in the vehicle.

1   Carreno also made a brief post-<u>Miranda</u> statement in which he claimed that the guns were for family members and that the May 14, 2008 incident was the first time he had sold drugs. When agents confronted him with the prior sales to TFO Paxton, defendant invoked.

Following Carreno and Escobar's arrest, agents executed the search warrant on 4038 Beta Street, San Diego, CA 92113. Agents there seized, among other things, the truck Defendant had utilized to drive to and from the March 26, 2008 sale, as well as seven cell phones and some firearms ammunition.

**III**

**POINTS AND AUTHORITIES**

**A.   DISCOVERY REQUESTS AND MOTION TO PRESERVE EVIDENCE**

  **1.   The Government Has or Will Disclose Information Subject To Disclosure Under Rule 16(a)(1)(A) and (B) Of The Federal Rules Of Criminal Procedure**

The government has disclosed, or will disclose well in advance of trial, any statements subject to discovery under Fed. R. Crim. P. 16(a)(1)(A) (substance of Defendant's oral statements *in response to government interrogation*) and 16(a)(1)(B) (Defendant's relevant written or recorded statements, written records containing substance of Defendant's oral statements *in response to government interrogation*, and Defendant's grand jury testimony).

  a.   The Government Will Comply With Rule 16(a)(1)(D)

To the extent they have a criminal record, Defendants have already been provided with their own "rap" sheet and the government will produce any additional information it uncovers regarding Defendants' criminal record. Any subsequent or prior similar acts of Defendants that the government intends to introduce under Rule 404(b) of the Federal Rules of Evidence will be provided, along with any accompanying reports, at a reasonable time in advance of trial.

  b.   The Government Will Comply With Rule 16(a)(1)(E)

The government will permit Defendants to inspect and copy or photograph all books, papers, documents, data, photographs, tangible objects, buildings or places, or portions thereof,

7

1  that are material to the preparation of Defendants' defense or are intended for use by the
2  government as evidence-in-chief at trial or were obtained from or belong to Defendants.

3  Reasonable efforts will be made to preserve relevant physical evidence which is in the
4  custody and control of the investigating agency and the prosecution, with the following exceptions:
5  drug evidence, with the exception of a representative sample, is routinely destroyed after 60 days,
6  and vehicles are routinely and periodically sold at auction. Records of radio transmissions, if they
7  existed, are frequently kept for only a short period of time and may no longer be available.
8  Counsel should contact the Assistant United States Attorney assigned to the case two weeks before
9  the scheduled trial date and the Assistant will make arrangements with the case agent for counsel
10  to view all evidence within the government's possession.

11  c.   The Government Will Comply With Rule 16(a)(1)(F)

12  The government will permit Defendants to inspect and copy or photograph any results or
13  reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof,
14  that are within the possession of the government, and by the exercise of due diligence may become
15  known to the attorney for the government and are material to the preparation of the defense or are
16  intended for use by the government as evidence-in-chief at the trial. Counsel for Defendants
17  should contact the Assistant United States Attorney assigned to the case and the Assistant will
18  make arrangements with the case agent for counsel to view all evidence within the government's
19  possession.

20  d.   The Government Will Comply With Its Obligations Under Brady

21  The government is well aware of and will fully perform its duty under Brady v. Maryland,
22  373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory
23  evidence within its possession that is material to the issue of guilt or punishment. Defendants,
24  however, are not entitled to all evidence known or believed to exist that is, or may be, favorable
25  to the accused, or that pertains to the credibility of the government's case. As stated in United
26  States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that:

27

28

> [T]he prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality.

611 F.2d at 774-775 (citations omitted). See also United States v. Sukumolachan, 610 F.2d 685, 687 (9th Cir. 1980) (the government is not required to create exculpatory material that does not exist); United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976) (Brady does not create any pretrial privileges not contained in the Federal Rules of Criminal Procedure).

e. Discovery Regarding Government Witnesses

(1) Agreements. The government has disclosed or will disclose the terms of any agreements by Government agents, employees, or attorneys with witnesses that testify at trial. Such information will be provided at or before the time of the filing of the Government's trial memorandum.[1] The government will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972).

(2) Bias or Prejudice. The government has provided or will provide information related to the bias, prejudice or other motivation to lie of government trial witnesses as required in Napue v. Illinois, 360 U.S. 264 (1959).

(3) Criminal Convictions. The government has produced or will produce any criminal convictions of government witnesses plus any *material* criminal acts which did not result in conviction. The government is not aware that any prospective witness is under criminal investigation.

(4) Ability to Perceive. The government has produced or will produce any evidence that the ability of a government trial witness to perceive, communicate or tell the truth is impaired or that such witnesses have ever used narcotics or other controlled substances, or are alcoholics.

---

[1] As with all other offers by the government to produce discovery earlier than it is required to do, the offer is made without prejudice. If, as trial approaches, the government is not prepared to make early discovery production, or if there is a strategic reason not to do so as to certain discovery, the government reserves the right to withhold the requested material until the time it is required to be produced pursuant to discovery laws and rules.

9

1    (5)    <u>Witness List.</u>  The government will endeavor to provide Defendants with a list of all witnesses which it intends to call in its case-in-chief at the time the government's trial memorandum is filed, although delivery of such a list is not required.  See <u>United States v. Dischner</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Culter</u>, 806 F.2d 933, 936 (9th Cir. 1986); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).  Defendants, however, are not entitled to the production of addresses or phone numbers of possible government witnesses.  See <u>United States v. Thompson</u>, 493 F.2d 305, 309 (9th Cir. 1977), <u>cert. denied</u>, 419 U.S. 834 (1974).  Defendants have already received access to the names of potential witnesses in this case in the investigative reports previously provided to him or her.

(6)    <u>Witnesses Not to Be Called.</u>  The government is not required to disclose all evidence it has or to make an accounting to Defendants of the investigative work it has performed.  <u>Moore v. Illinois</u>, 408 U.S. 786, 795 (1972); <u>see</u>  <u>United States v. Gardner</u>, 611 F.2d 770, 774-775 (9th Cir. 1980).  Accordingly, the government objects to any request by Defendants for discovery concerning any individuals whom the government does not intend to call as witnesses.

(7)    <u>Favorable Statements.</u>  The government has disclosed or will disclose the names of witnesses, if any, who have made favorable statements concerning Defendants which meet the requirements of <u>Brady</u>.

(8)    <u>Review of Personnel Files.</u>  The government has requested or will request a review of the personnel files of all federal law enforcement individuals who will be called as witnesses in this case for <u>Brady</u> material.  The government will request that counsel for the appropriate federal law enforcement agency conduct such review.  <u>United States v. Herring</u>, 83 F.3d 1120 (9th Cir. 1996); <u>see, also</u>, <u>United States v. Jennings</u>, 960 F.2d 1488, 1492 (9th Cir. 1992); <u>United States v. Dominguez-Villa</u>, 954 F.2d 562 (9th Cir. 1992).

Pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991) and <u>United States v. Cadet</u>, 727 F.2d 1452 (9th Cir. 1984), the United States agrees to "disclose information favorable

to the defense that meets the appropriate standard of materiality . . ." <u>United States v. Cadet</u>, 727 F.2d at 1467, 1468. Further, if counsel for the United States is uncertain about the materiality of the information within its possession in such personnel files, the information will be submitted to the Court for <u>in camera</u> inspection and review.

(9) <u>Government Witness Statements.</u> Production of witness statements is governed by the Jencks Act, 18 U.S.C. § 3500, and need occur only after the witness testifies on direct examination. <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 (9th Cir. 1986); <u>United States v. Mills</u>, 641 F.2d 785, 790 (9th Cir. 1981)). Indeed, even material believed to be exculpatory and therefore subject to disclosure under the <u>Brady</u> doctrine, if contained in a witness statement subject to the Jencks Act, need not be revealed until such time as the witness statement is disclosed under the Act. See <u>United States v. Bernard</u>, 623 F.2d 551, 556-57 (9th Cir. 1979).

The government reserves the right to withhold the statements of any particular witnesses it deems necessary until after the witness testifies. Otherwise, the government will disclose the statements of witnesses at the time of the filing of the government's trial memorandum, provided that defense counsel has complied with Defendant's obligations under Federal Rules of Criminal Procedure 12.1, 12.2, and 16 and 26.2 and provided that defense counsel turn over all "reverse Jencks" statements at that time.

f. The Government Objects To The Full Production Of Agents' Handwritten Notes At This Time

Although the government has no objection to the preservation of agents' handwritten notes, it objects to requests for full production for immediate examination and inspection. If certain rough notes become relevant during any evidentiary proceeding, those notes will be made available.

Prior production of these notes is not necessary because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions *and* they have been approved or adopted by the witness. <u>United States v.</u>

11

Spencer, 618 F.2d 605, 606-607 (9th Cir. 1980); see also United States v. Griffin, 659 F.2d 932, 936-938 (9th Cir. 1981).

        g.      All Investigatory Notes and Arrest Reports

The government objects to any request for production of all arrest reports, investigator's notes, memos from arresting officers, and prosecution reports pertaining to Defendants. Such reports, except to the extent that they include Brady material or the statements of Defendant, are protected from discovery by Rule 16(a)(2) as "reports . . . made by . . . Government agents in connection with the investigation or prosecution of the case."

Although agents' reports may have already been produced to the defense, the government is not required to produce such reports, except to the extent they contain Brady or other such material. Furthermore, the government is not required to disclose all evidence it has or to render an accounting to Defendant of the investigative work it has performed. Moore v. Illinois, 408 U.S. 786, 795 (1972); see United States v. Gardner, 611 F.2d 770, 774-775 (9th Cir. 1980).

        h.      Expert Witnesses.

Pursuant to Fed. R. Crim. P. 16(a)(1)(G), at or about the time of filing its trial memorandum, the government will provide the defense with notice of any expert witnesses the testimony of whom the government intends to use under Rules 702, 703, or 705 of the Fed. R. of Evidence in its case-in-chief. Such notice will describe the witnesses' opinions, the bases and the reasons therefor, and the witnesses' qualifications. Reciprocally, the government requests that the defense provide notice of its expert witnesses pursuant to Fed. R. Crim. P. 16(b)(1)(C).

        i.      Information Which May Result in Lower Sentence.

Defendants have claimed or may claim that the government must disclose information about any cooperation or any attempted cooperation with the government as well as any other information affecting Defendants' sentencing guidelines because such information is discoverable under Brady v. Maryland. The government respectfully contends that it has no such disclosure obligations under Brady.

1    The government is not obliged under <u>Brady</u> to furnish a defendant with information which he already knows. <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986), <u>cert. denied</u>, 479 U.S. 1094 (1987); <u>United States v. Prior</u>, 546 F.2d 1254, 1259 (5th Cir. 1977). <u>Brady</u> is a rule of disclosure. There can be no violation of <u>Brady</u> if the evidence is already known to Defendant.

    Assuming that Defendants did not already possess the information about factors which might affect their respective guideline range, the government would not be required to provide information bearing on Defendants' mitigation of punishment until after Defendants' conviction or plea of guilty and prior to his sentencing date. "No [<u>Brady</u>] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains of value." <u>United States v. Juvenile Male</u>, 864 F.2d 641 (9th Cir. 1988).

**B.  THE GOVERNMENT DOES NOT OPPOSE LEAVE TO FILE FURTHER MOTIONS SO LONG AS THEY ARE BASED ON NEW EVIDENCE**

    The Government does not object to the granting of leave to file further motions as long as the order applies equally to both parties and any additional defense motions are based on newly discovered evidence or discovery provided by the Government subsequent to the instant motion.

### V

### CONCLUSION

    For the foregoing reasons, the Government respectfully requests that its motions for reciprocal discovery and leave to file further motions be granted.

DATED: July 2, 2008.

                    Respectfully submitted,

                    KAREN P. HEWITT
                    United States Attorney


                    s/ Aaron B. Clark
                    AARON B. CLARK
                    Assistant United States Attorney

|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| SOUTHERN DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>MAGDALENO CARRENO, JR., and<br>VALENTINE ESCOBAR-CHAVEZ,<br><br>Defendant(s). | Case No. 08CR1731-H<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, AARON B. CLARK, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of UNITED STATES' RESPONSE on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. John Fielding

2. Inge Brauer

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 2, 2008.

            s/ Aaron B. Clark
            AARON B. CLARK